IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| MARTIN RUGAMBA, | : |
| --- | --- |
| Plaintiff, | : |
| v. | : Civil Action No. GLR-15-3948 |
| ROCKLEDGE BUS (TOUR), INC., et al., | : |
| Defendants. | : |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiff Martin Rugamba's Amended Complaint (ECF No. 18), filed under 28 U.S.C. § 1915(a)(1) (2018), alleging violations of 42 U.S.C. § 1983 (2018) and Maryland tort law.[1] For the reasons that follow, the Court will permit Rugamba's § 1983 claim to proceed but dismiss his state law claims.

### I. BACKGROUND[2]

**A. The Original Complaint and Appeal**

On December 24, 2015, Rugamba filed the original Complaint (the "Original Complaint") in this case. (ECF No. 1). In the Original Complaint, Rugamba raised

---

[1] On May 4, 2018, Rugamba filed a letter requesting to use the Court's electronic filing system to file "electronic evidence" with the Court. (ECF No. 19). Because docketing and case management is an important and often complex process, it is the Court's normal practice to allow CM/ECF access only to attorneys who are members of this bar. The Court does, however, grant access to nonlawyers in extraordinary circumstances. Given that Rugamba did not provide such circumstances in his correspondence, the Court will deny without prejudice his request.

[2] Unless otherwise noted, the Court describes facts taken from the Complaint and Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

several claims, including claims under § 1983, and invoked this Court's jurisdiction under 28 U.S.C. § 1331 (2018). (Compl. at 1, ECF No. 1).

The Court screened Rugamba's Original Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) (2018). The Original Complaint's allegations are wide-ranging and nonsensical at times. First, Rugamba discusses alleged incidents occurring over the seven years he worked as a substitute teacher in the Los Angeles, California Unified School District. (Compl. at 1–2). Next, Rugamba generally discusses abuse and assaults he experienced while substitute teaching at a number of schools in Maryland. (Id. at 2). In his statement of facts, however, Rugamba discusses alleged attacks he experienced riding on Defendant Rockledge Bus Tour Inc.'s ("Rockledge") private bus line on December 21, 2014. (Id. at 3). Rugamba also alleges that he experienced "[s]imilar attacks" while riding on a Maryland Transit Administration ("MTA") train and bus. (Id.). Rugamba attributes these attacks to a "conspiracy" that began after he filed a lawsuit in New York "about assault and battery involving . . . HIV." (Id.).

With respect to the specific allegations in the Original Complaint, Rugamba states that in March of 2015 he was asleep on an MTA train when an MTA police officer ("MTA Police Officer 1") "woke me up to see my ticket," then "ordered me to step out of the train because I was sleeping on the train." (Id.). Rugamba alleges that the officer "yanked forcefully" at a bag "tethered" to his wrist, which "caused a strong pain" in his wrist, yelled at him to get off the train, "dropped [his] bag on the ground," and began to interrogate him. (Id.). Rugamba implies that the bag dropping on the ground resulted in cracks to his laptop's screen. (Id.). Rugamba pleads that MTA Police Officer 1 demanded

and took his identification card and MTA day pass. (Id.). Rugamba states that she returned his identification card, but refused to return his MTA day pass. (Id.). A second MTA police officer threatened to arrest him after she ordered him to leave the station premises, and he instead requested his MTA day pass. (Id.). Rugamba states that he walked away without his MTA day pass and with "pain in my wrist." (Id. at 4).

Rugamba then alleges, on unspecified dates, that an MTA bus driver and train operator somehow caused pain in his arm "like a bee sting or needle injection." (Id.). As to the train operator, Rugamba pleads that the MTA police involved in the March 2015 incident "arranged" for the train operator to "irritate" him "by acting up the pain in my arms in contemplation of an arrest should I [ ] antagonize him." (Id.).

Rugamba next discusses incidents at public high schools occurring in Spring 2014, when he was demeaned by school staff. (Id.). Rugamba goes on to relate an alleged incident at a 7-Eleven convenience store, where he pleads that he was embarrassed when an employee accused him of stealing a burrito. (Id.).

In his "First Cause of Action," Rugamba alleges that MTA Police Officer 1 violated his rights under the Fourth and Fourteenth Amendments[3] to the United States Constitution by "unreasonably hurt[ing]" him and confiscating his day pass without due process. (Id. at 5). He accuses the officer of engaging in an "arrest-fishing expedition," states that her actions deprived him of sleep, and that she was "playing her one-time part in a sleep

---

[3] Rugamba also alleges a violation of Md. Code Ann., Cts. & Jud. Proc. ["CJP"] § 5-105 (West 2018). CJP § 5-105 is not, however, a source of substantive law. Rather, it provides a one-year statute of limitations for assault, libel, and slander causes of action.

deprivation campaign orchestrated by other stalker officers and their minions." (Id.). He seeks the value of his day pass, $3.50, $100.00 to repair his laptop, and $20,000.00 in emotional distress damages. (Id.).

In his "Second Cause of Action," Rugamba pleads that Rockledge and its employees "committed aggravated battery, when they inflicted pain similar to the needle injection while I was asleep on the bus they operate." (Id.). He further alleges that they "neglected to inform me if the HIV virus was involved in the battery in violation of public policy." (Id. at 6). He requests $50,000.00 in damages for "negligent infliction of emotional distress." (Id.).

In his "Third Cause of Action," Rugamba accuses Amtrak agents of taking pictures of him at their facilities and "stealing ad hoc pictures I stored on my computer and smart phone." (Id.). He prays for declaratory relief indicating that the agents "are members of an underground unofficial cabal in the law enforcement." (Id.).

On January 11, 2016, the Court granted Rugamba's Motion for Leave to Proceed in Forma Pauperis but dismissed the Original Complaint without prejudice for failure to comply with Federal Rule of Civil Procedure 8. (ECF Nos. 3, 4). Rugamba appealed. (ECF No. 5).

On June 28, 2016, the United States Court of Appeals for the Fourth Circuit dismissed Rugamba's appeal, finding that it did not have jurisdiction because "the deficiencies identified by the district court may be remedied by the filing of an amended complaint." Rugamba v. Rockledge Bus (Tour), Inc., 667 F.App'x 61 (4th Cir. 2016). This Court's decision, therefore, was "neither a final order nor an appealable interlocutory

4

or collateral order." Id. On July 27, 2016, Rugamba filed a Motion to Reopen Case, (ECF No. 10), which the Court denied, (ECF No. 11). Rugamba again appealed. (ECF No. 12).

On August 3, 2017, the Fourth Circuit vacated the judgment of the Court denying the Motion to Reopen and remanded the matter to permit Rugamba an opportunity to amend his Complaint. Rugamba v. Rockledge Bus (Tour), Inc., 694 F.App'x 191, 192 (4th Cir. 2017). The Court reopened the case. (See ECF No. 17).

**B.    The Amended Complaint**

In his Amended Complaint, Rugamba modifies the named Defendants to include the corporate entity of 7-Eleven, an unidentified 7-Eleven employee, an unidentified MTA train operator, an Amtrak/MARC ticket attendant, a Chesapeake High School "Raptor operator," and John or Jane "Does 1 to 10." (Am. Compl. at 1–2, ECF No. 18). He alleges that Defendants are "members of a group that stalks me." (Id. at 1).

Rugamba again relates the incidents set out in his Original Complaint. First, he recounts a January 13, 2015 incident at an unspecified 7-Eleven convenience store, presumably in Maryland, where a female employee and her supervisor falsely accused him of stealing a burrito from another 7-Eleven store. (Id. at 2). He asserts that "discovery is needed to find out who coaxed them into this slander[ous] act." (Id.).

Second, Rugamba pleads that on March 9, 2015, MTA Police Officer 1 violated his Fourth Amendment rights by "pulling a bag whose strings were tethered on [his] wrist" causing him "intense pain."[4] (Id.). Rugamba further pleads that she "caused cracks" in his

---

[4] Rugamba also again cites to CJP § 5-105, which is a statute of limitations provision, and does not provide a cause of action.

5

laptop, resulting in an estimated $100.00 in damages, and confiscated his MTA day pass. (Id.). He alleges that the officer's acts were "premeditated and carried out in a group-stalker evil spirit in retaliation for reporting police-teacher stalkers to authorities." (Id. at 3).

Third, Rugamba alleges that, on an unspecified dated, Rockledge "assaulted him by inflicting pain similar to a needle injection." (Id.). He further alleges that on December 23 and 25, 2015, a "black female" MTA bus driver and a "[L]atino" MTA train conductor perpetrated "copycat attacks" on him. (Id.). He states that "[t]he similarity of these attacks suggests that a conspiracy is involved" and that they occurred after he "filed a lawsuit in New York about an assault and battery involving possible HIV [ ] against Planet Fitness and Rockledge." (Id.). Rugamba pleads that as a result of these attacks, he "suffer[s] intense fear of being infected by HIV," and that "Defendants were motivated by evil spirit prevailing among my relentless stalkers." (Id.). He seeks nominal damages. (Id.).

Fourth, Rugamba complains that the operator of Chesapeake High School's Raptor visitor identification system printed "Faartin" instead of Martin on his visitor identification sticker. (Id.). As a result, he "endured the pain of sporting the sticker on my chest all day." (Id.). Rugamba brings a libel per se claim against the Raptor operator because he or she "altered [his] name to sound like the noise of intestine/bowel gas." (Id. at 4). He alleges that "[t]hey did it with evil spirits" to "ridicule" him and "shun" him and prevent him from receiving future substitute teaching assignments. (Id.).

Fifth, Rumbaga claims that on November 26, 2015, while at a MARC train station, the ticket vending machine overcharged him for his fare by $83.00. (Id.). He states that

this incident was similar to a prior incident he had with the Rockledge website. (Id.) Rugamba further alleges that he went to Penn Station in Baltimore, Maryland to cancel the transaction, but he was issued only a partial refund of $47.00. (Id.). Rugamba brings a conversion claim against Amtrak and MARC for "altering the machine with the evil motive prevailing among my stalkers." (Id.). He seeks "prospective injunctive relief that the defendant discipline the vending machine operator." (Id.).

## II. DISCUSSION

### A. Standard of Review

Rugamba filed his Complaint under 28 U.S.C. § 1915(a)(1) (2018), which permits an indigent litigant to commence an action in federal district court without prepaying the filing fee. Under 28 U.S.C. § 1915(e)(2), the Court is required to review civil complaints filed in forma pauperis to determine if the plaintiff alleges cognizable claims. Upon review, if the Court concludes that a claim is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief," the Court must dismiss the complaint. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

The Court is mindful, however, of its obligation to liberally construe pro se pleadings, such as the instant Amended Complaint. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). In evaluating such a complaint, the Court assumes that the factual allegations are true. Id. at 93 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980).

Nonetheless, "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" Weller v. Dep't of Soc. Servs. for Balt., 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)).

An in forma pauperis complaint may not be dismissed, however, simply because the court finds the plaintiff's allegations unlikely. In Neitzke v. Williams, 490 U.S. 319 (1989), the United States Supreme Court explained that the statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id. at 327. Indeed, § 1915 was amended after Neitzke, such that now the statute mandates that a district court "shall dismiss" a case upon a finding that the Complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); see Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000).

### B. Analysis

At bottom, the Court concludes that Rugamba states a Fourth Amendment excessive force claim related to the incident involving MTA Police Officer 1. The Court further concludes that it does not have supplemental jurisdiction over Rugamba's remaining claims.

#### 1. Fourth Amendment Excessive Force Claim

Under the Fourth Amendment, the Court considers whether a police officer's

actions were objectively reasonable in light of the facts and circumstances confronting her, without regard to her underlying intent or motivation. Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). The Court assesses the objective reasonableness of the force "in full context, with an eye toward the proportionality of the force in light of all the circumstances." Estate of Robert Ethan Saylor v. Regal Cinemas, Inc., No. WMN-13-3089, 2016 WL 4721254, at *8 (D.Md. Sept. 9, 2016) (quoting Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994)), aff'd sub nom. Estate of Saylor v. Rochford, 698 F.App'x 72 (4th Cir. 2017). In doing so, the Court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

Here, based on Rugamba's allegations, MTA Police Officer 1 did not suspect him of any crime, nor did he pose any immediate threat to the safety of the officer or the public. Further, the Amended Complaint contains no factual matter indicating that Rugamba was resisting arrest or attempting to evade arrest. Based on the totality of the circumstances Rugamba alleges, which at this stage of the litigation the Court must take to be true, MTA Police Officer 1 pulling on the bag tied to Rugamba's wrist and causing him pain was objectively unreasonable. Thus, the Court concludes that Rugamba plausibly states a Fourth Amendment excessive force claim.

Rugamba did not, however, file a completed summons and U.S. Marshal service of process form. The Court will, therefore, grant Rugamba twenty-eight (28) days to file these forms with the Court.

Under Federal Rule of Civil Procedure 4(j), service upon a state, municipal corporation or other state-created governmental organization subject to suit shall be effected by delivering a copy of the summons and complaint to its chief executive officer; or by serving the summons and complaint in the manner prescribed by the law of the state for the service of summons or other like process upon any such a defendant. Maryland Rule 2-121(a) governs service of process on individuals; Maryland Rule 2-124(l) governs service on an officer or agency of a local government; Maryland Rule 2-124(j) governs service of process on the State of Maryland; and Maryland Rule 2-124(k) governs service of process on an officer or agency of the State of Maryland. Both LexisNexis and Westlaw provide free public access to the Maryland Rules.

## 2. Supplemental Jurisdiction

As to the remaining claims of slander per se, assault and battery, libel per se, and conversion, they all sound in state tort law. Under 28 U.S.C. § 1367(a) (2018), a federal district court has supplemental jurisdiction over claims that are "so related" to the claims over which the court has original jurisdiction that they "form part of the same case or controversy." Related claims are part of the same case or controversy if they arise out of "a 'common nucleus of operative fact' such that the plaintiff would ordinarily be expected to try these claims in one judicial proceeding." White v. County of Newberry, 985 F.2d 168, 171 (4th Cir. 1993) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).

Here, Rugamba's state law claims rely on facts that are completely unrelated to his allegations against MTA Police Officer 1. They occurred at different times, in different locations, and involved different individuals. The Court, therefore, concludes that it does

not have supplemental jurisdiction over Rugamba's state law claims.  See § 1367(a); see also Radfar v. Rockville Auto Grp. LLC, No. GJH-16-3082, 2018 WL 2972485, at *3 (D.Md. June 12, 2018) (concluding that the court did not have supplemental jurisdiction over the plaintiff's state law breach of contract claim that was "wholly separate" his Fair Labor Standards Act and Maryland Wage and Hour Act claims).

In sum, the Court concludes that Rugamba plausibly states a Fourth Amendment excessive force claim against MTA Police Officer 1.  As to Rugamba's remaining claims, because they are unrelated to his constitutional claim, the Court does not have supplemental jurisdiction over them.  Accordingly, the Court will dismiss Rugamba's remaining claims.

### III.  CONCLUSION

For the foregoing reasons, the Court will permit Rugamba's claim against MTA Police Officer 1 to proceed but will dismiss his remaining unrelated claims.  A separate order follows.

Entered this 20th day of July, 2018

/s/
George L. Russell, III
United States District Judge
